IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROY B. CONANT,                                              No. 3:16-cv-02290-HZ

        Plaintiff,

   v.

KATE BROWN, Governor, State of                    OPINION & ORDER
Oregon; JEANNE P. ATKINS, Secretary of
State of the State of Oregon; and ELLEN F.
ROSENBLUM, Attorney General, State of
Oregon,

        Defendants.

Roy B. Conant
1833 N.E. 52nd Avenue, No. 3
Portland, Oregon 97213

    Plaintiff Pro se

/ / /

/ / /

/ / /

1 - OPINION & ORDER

Ellen F. Rosenbaum
ATTORNEY GENERAL
Christina Beatty-Walters
SENIOR ASSISTANT ATTORNEY GENERAL
Department of Justice
100 S.W. Market Street
Portland OR 97201

     Attorneys for Defendants

HERNANDEZ, District Judge:

     Plaintiff Roy B. Conant, appearing *pro se*, brings this voting rights action against Kate

Brown, Governor of the State of Oregon, and Ellen Rosenbaum, Oregon's Attorney General.  In

an Amended Complaint filed December 27, 2016, ECF 14, Plaintiff dropped the State of Oregon

as a Defendant and added then-Secretary of State Jeanne Atkins as a Defendant.  Because

Plaintiff asserts his claims against Defendants in their official capacities, Am. Compl. 2, ¶¶ 2a-

2c, and because Dennis Richardson is now Oregon's Secretary of State, I construe the claims as

being brought against Richardson instead of Atkins.

     Generally, Plaintiff attacks as unconstitutional certain Oregon statutes governing the

processes for voting in presidential elections.  He relies on Section 2 of the Fourteenth

Amendment as the constitutional provision at issue although he mentions other constitutional

provisions as well.  He argues that the state law prohibiting the names of the presidential

electors[1] themselves from appearing on the ballot violates Section 2 of the Fourteenth

Amendment.  He also challenges Oregon's "winner take all" system of awarding presidential

electors based on a majority/plurality vote.  Additionally, he argues that Oregon's "closed"

---

    [1] My reference to "presidential electors" includes electors for both president and vice-president.

2 - OPINION & ORDER

primary system effectively deprives him of the right to vote.

Defendants move to dismiss for lack of subject matter jurisdiction and alternatively, for failure to state a claim. I address both arguments. I agree with Defendants that Plaintiff's Amended Complaint fails to contain allegations establishing constitutional standing and I also conclude that some of Plaintiff's requested relief is moot. Ordinarily, I would allow Plaintiff leave to amend to attempt to cure the standing defect. However, because I further agree with Defendants that Plaintiff fails to state a legally cognizable claim, any such amendment would be futile. As a result, I grant Defendants' motion and I dismiss the claims with prejudice.

## STANDARDS

### I. Subject Matter Jurisdiction

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(1) addresses the court's subject matter jurisdiction. The party asserting jurisdiction bears the burden of proving that the court has subject matter jurisdiction over his claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

A challenge to standing is appropriately raised pursuant to Federal Rule of Civil Procedure 12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)") (emphasis omitted); *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) ("Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss.").

To satisfy Article III standing, a plaintiff must show that he or she has suffered an "injury in fact" and a "causal connection between the injury and the challenged action of the defendant."

*Multistar Indus., Inc. v. U.S. Dep't. of Transp.*, 707 F.3d 1045, 1054 (9th Cir. 2013) (also noting

third requirement that it be likely, not speculative, that the injury will be "redressed by a

favorable decision") (internal quotation marks omitted).  The party seeking to invoke the

subject-matter jurisdiction of the court has the burden of establishing that such jurisdiction exists.

*Chandler*, 598 F.3d at 1122.

II.  Failure to State a Claim

A motion to dismiss for failure to state a claim may be granted only when there is no

cognizable legal theory to support the claim or when the complaint lacks sufficient factual

allegations to state a facially plausible claim for relief.  *Shroyer v. New Cingular Wireless Servs.,*

*Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).  In evaluating the sufficiency of a complaint's factual

allegations, the court must accept all material facts alleged in the complaint as true and construe

them in the light most favorable to the non-moving party.  *Wilson v. Hewlett–Packard Co.*, 668

F.3d 1136, 1140 (9th Cir. 2012).  However, the court need not accept unsupported conclusory

allegations as truthful.  *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992); *see also*

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139  (9th Cir. 2003) ("we do not

necessarily assume the truth of legal conclusions merely because they are cast in the form of

factual allegations") (internal quotation marks and alterations omitted).

## DISCUSSION

I.  Subject Matter Jurisdiction

Defendants correctly characterize the Amended Complaint as lacking in relevant factual

assertions.  Other than alleging the office of each named Defendant and Plaintiff's place of birth,

citizenship, and residence, the remainder of the allegations are legal assertions and conclusions.

There is no factual assertion that Plaintiff is registered to vote in Oregon which would be a predicate for alleging harm caused by laws governing the post-registration voting process. Also, Plaintiff baldly concludes that certain Oregon statutes violate the constitutional rights of unaffiliated voters. However, he does not allege that he is an unaffiliated voter. There are no factual assertions that he has been injured. The only allegations of harm are conclusory ones averring that "[h]arm to Plaintiff occurred in concert with the Presidential Primary election of May 17, 2016; the 2016 Presidential election held on November 8, 2016; and the convening of electors on December 19, 2016." Am. Compl. 5. Because these allegations are insufficient, Plaintiff fails to establish that he has constitutional standing to pursue these claims.[2]

Defendants also argue that to the extent Plaintiff's claims relate to the 2016 presidential primary and general election and seek relief based on those claims, the claims are moot because the electors have already fulfilled their duties relating to the November 2016 presidential election. Because mootness is a jurisdictional issue, Defendants argue that the claims addressed to the certification of the 2016 election results must be dismissed. *E.g.*, *Zixiang Li v. Kerry*, 710 F.3d 995, 1001 (9th Cir. 2013) (when it is no longer possible to obtain relief for a claim, the claim is moot and "must be dismissed for lack of jurisdiction") (internal quotation marks omitted). I agree with Defendants that the challenges to the 2016 certified election results and ascertainment of electors are moot because that process is complete, the electors have performed their duties, and the President has been inaugurated.

However, a court may invoke jurisdiction over a claim for declaratory relief even if the

---

[2] Plaintiff's list of facts contained in his Response Memorandum cannot substitute for the deficient Amended Complaint. Moreover, even if I consider them, the claims still fail to state a claim for the reasons discussed below.

case is moot in regard to injunctive relief.  *Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008)

(citing *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 121–22 (1974)).  Under *Super Tire*, a

claim remains live if a challenged policy is fixed and definite, not contingent upon executive

discretion, and by its continuing presence casts a substantial adverse effect on the interests of the

parties.  416 U.S. at 122–24.  While Paragraphs 7 and 8 in Plaintiff's Prayer for Relief seek

injunctive relief, Paragraphs 1-6 seek declaratory relief requesting that the Court "find" certain

statutory provisions and the winner-take-all electoral vote allocation to be unconstitutional.  Am.

Compl. 6-7.  *Super Tire* indicates that jurisdiction over Plaintiff's claims is appropriate to the

extent they seek declaratory relief.

Additionally, an otherwise moot action may still be subject to review under the "capable

of repetition, yet evading review" exception, which applies when both the duration of the

challenged action is too short to allow full litigation before it ceases, and there is a reasonable

expectation that the plaintiffs will be subjected to the same action again.  *Spencer v. Kemna*, 523

U.S. 1, 17 (1998).  This principle applies in election cases.  *E.g.*, *Norman v. Reed*, 502 U.S. 279,

287 (1992) (challenge to law regarding the placement of new party on ballot not moot even

though election was over because issue was "worthy of resolution as capable of repetition, yet

evading review") (internal quotation marks omitted); *Rosario v. Rockefeller*, 410 U.S. 752, 756

n.5 (1973) (challenge to election law was not moot even though the primary election had been

completed because question raised was "capable of repetition, yet evading review.").

II.  Failure to State a Claim

Plaintiff's claims as pleaded in the Amended Complaint are not entirely clear, and his

Response Memorandum filed in opposing Defendants' motion, ECF 23, provides only limited

clarity as to his theories.  Reading the Amended Complaint and Response Memorandum together, I understand Plaintiff to be raising the following claims: (1) Oregon Revised Statute § (O.R.S.) 254.365 which governs voting in a primary election and provides, among other things, that the voter[3] be registered with one of the major political parties or registered as a nonaffiliated voter and who desires to vote in the primary of a major political party that admits nonaffiliated voters, violates the Equal Protection Clause and the principle of one-person, one-vote[4]; Am. Comp. 3, ¶ 1; (2) O.R.S. 248.355 which requires candidates for the position of presidential elector to sign a pledge that if elected, the presidential elector will vote in the electoral college for the candidates of the party of president and vice-president, violates the Equal Protection Clause and the principle of one-person, one-vote; *id.*, ¶ 1; (3) Oregon's "winner take all" system for allocating presidential electors violates the Equal Protection Clause and the principle of one-person, one-vote; Am. Compl. 4, ¶ 3; and (4) O.R.S. 248.360(2) which prohibits the names of presidential electors from being printed on the ballot, violates Section 2 of the Fourteenth

---

[3]  The statute uses the term "elector" instead of voter.  O.R.S. 254.365. "Elector" is defined as "an individual qualified to vote under section 2, Article II, Oregon Constitution." O.R.S. 254.005(4).  Because this Opinion also addresses Plaintiff's claims directed toward presidential "electors" as part of the electoral college, I use the term "voter" when referring to the Oregon statutes to avoid confusion.

[4]  "One-person, one-vote" is an equal protection guarantee although that specific language does not appear in the Fourteenth Amendment.  It is a "catch-phrase" recognizing "that the collective dilution of many individuals' votes can result in a form of unconstitutional disenfranchisement, even when no one individual is turned away at the ballot box." *Kirk v. Carpeneti*, 623 F.3d 889, 897 (9th Cir. 2010) (discussing *Reynolds v. Sims*, 377 U.S. 533 (1964)); *see also Dudum v. Arntz*, 640 F.3d 1098, 1112 n.23 (9th Cir. 2011) ("'one person, one vote' cases involve instances in which citizens from heavily-populated districts select the same number of legislative representatives as voters from sparsely populated districts, with the result that their votes have less potential impact on the legislative process").

Amendment.  *Id.*, ¶ 4.[5]

A.  O.R.S. 254.365

This statute, entitled "Voting at primary election by major party members and nonaffiliated electors" prohibits a voter from voting at a primary election for any candidate of a major political party unless one of two conditions is met:  (1) the voter is registered as being affiliated with one of the major political parties; or (2) the voter is registered as not being affiliated with any political party and wishes to vote in the primary of a major political party that has provided, under subsection (3) of the statute, for a primary election that admits electors not affiliated with any political party.  O.R.S. 254.365(1)(a), (b).  Under subsection (2), except as provided in O.R.S. 254.370(3), a primary election voter registered as being affiliated with a major political party is given a ballot of that major political party and may not be given a ballot of any other political party at that primary election.  O.R.S. 254.365(2).  A nonaffiliated voter shall be given the ballot of the major political party in whose primary election that voter wishes to vote if that major political party has provided, under subsection (3) of the statute, for a primary that admits electors not affiliated with any political party.  *Id.*  Under subsection (3), a major political party may allow a voter who is not affiliated with any political party to vote in the major political party's primary election.  O.R.S. 274.365(3).

Plaintiff alleges that O.R.S.254.365 deprives the unaffiliated voter of the right to

---

[5]  In a separate paragraph of the Amended Complaint, Plaintiff alleges that Section 2 of the Fourteenth Amendment "supersedes the plenary authority of the State Legislature to 'appoint' electors for President and Vice President."  Am. Compl. 5, ¶ 5.  As Defendants note, it is unclear if this is a separately stated claim.  I understand this to be an additional argument in support of Plaintiff's position that Oregon's prohibition on placing the names of presidential electors on the ballot is unconstitutional.  I do not construe it as a completely separate claim.  Even if it is a separate claim however, it has no merit for the reasons discussed below.

effectively "voice a vote in the selection of electors for the quadrennial Presidential ballot." Am. Compl. 3, ¶ 1. He further contends that the statute violates the principle of one-person, one-vote and the Equal Protection Clause. *Id.* He contends that the principle of one-person, one-vote" is violated because unaffiliated voters in states with primary voting systems such as Oregon's have less power than those in the nineteen states which have open primaries. *Id.*

In his Response Memorandum, Plaintiff argues that the Oregon statute violates his right of voluntary association under the First Amendment as well as his rights articulated in Section 2, Clause 2 of the Fourteenth Amendment. Pl. Resp. Mem. 18-23. He asserts that just over twenty-nine percent of Oregon's registered voters in the 2016 general election were either "nonaffiliated or other" and thus, were "forbidden" the franchise in the May 2016 primary election. *Id.* at 19. He contends that he is constructively coerced into joining a political party for his voice to be heard. *Id.* Further, he argues that because he is constructively prevented from voting in Oregon's presidential primary election without first joining a major political party which may not speak to his individual "concerns, aspirations, and tenets," his vote is diminished and infringed. *Id.* at 21.

Primary elections generally fall into three categories: closed, semi-closed, and open. *Parson v. Alcorn*, 157 F. Supp. 3d 479, 485 (E.D. Va. 2016) ("Three principal types of primaries exist: closed, semiclosed, and open.") (footnotes omitted). An "open" primary allows a person to vote without being "required to declare publicly a party preference or to have that preference publicly recorded." *Democratic Party of the U.S. v. Wis. ex rel. La Follette*, 450 U.S. 107, 111 n. 4 (1981) (internal quotation marks omitted). "The major characteristic of open primaries is that any registered voter can vote in the primary of any party." *Id.* (internal quotation marks

omitted).[6]  In a "closed" primary, "only persons who are members of the political party . . . can vote on its nominee." *Cal. Democratic Party*, 530 U.S. at 570.  And in a "semi-closed" primary, a party may invite independent voters as well as its own registered members to vote in its primary.  *Clingman v. Beaver*, 544 U.S. 581, 584 (2005).

Although Plaintiff refers to Oregon's primary election system as "closed," it is more accurately described as semi-closed because Oregon grants major political parties the option of allowing nonaffiliated voters to vote in the party's primary election.  O.R.S. 254.365(3)(a); *see Clingman*, 544 U.S. at 584 (Oklahoma election laws providing that only registered members of a political party may vote in the party's primary unless the party opens its primary to registered voters who were independents, described by the Court as a "semi-closed" primary system).  Accordingly, nonaffiliated voters are not deprived of the right to vote in the primary by Oregon statute.  Instead, it is left to each major political party to determine whether to allow nonaffiliated voters to vote in that party's primary.

However, even if Oregon had a true closed primary system, the Ninth Circuit has already rejected the constitutional arguments Plaintiff raises here.  In *Ziskis v. Symington*, the Ninth Circuit concluded that Arizona's closed primary system, in which voters not affiliated with a political party cannot vote in the primary election, did not violate the plaintiff's free association, equal protection, or voting rights.  47 F.3d 1004, 1005-06 (9th Cir. 1995).  The facts and the law

---

[6]  A fourth category referred to as a "blanket" primary, is a variant of an open primary.  In an open primary, the voter "is limited to that party's nominees *for all offices*. [A voter] may not, for example, support a Republican nominee for Governor and a Democratic nominee for attorney general."  *Cal. Democratic Party v. Jones*, 530 U.S. 567, 576 n.6 (2000).  In contrast, in a "blanket" primary, "all candidates are combined on a single ballot and may be voted upon by voters affiliated with any party."  *Alaskan Indep. Party v. Alaska*, 545 F.3d 1173, 1178 (9th Cir. 2008).

are indistinguishable from the present case.  Like Plaintiff here, the plaintiff in *Ziskis* challenged the closed party primary election law "as it applies to non-party, independent voters like himself." *Id.* at 1005.

The *Ziskis* court looked to a similar Connecticut case which was summarily affirmed by the Supreme Court.  *Nader v. Schaffer*, 417 F. Supp. 837 (D. Conn), *summarily aff'd*, 429 U.S. 989 (1976).  *Nader* involved a challenge by a non-party member to a state's closed party primary election law which was virtually identical to the Arizona law at issue in *Ziskis*.  The plaintiff in *Ziskis*, like the plaintiff in *Nader*, and like Plaintiff here, asserted violations of the right to free association, the right to vote, and the right to equal protection.  *Ziskis*, 47 F.3d at 1006.

Following the reasoning in *Nader*, the *Ziskis* court agreed that strict judicial review was unwarranted absent "'more than a minimal infringement'" on the constitutional rights asserted and that "registering as a member of a political party 'is not particularly burdensome[.]'"  *Id.* (quoting *Nader*, 417 F. Supp. at 847).  Furthermore, registering is a "'minimal demonstration by the voter that he has some commitment to the party in whose primary he wishes to participate.'"  *Id.* (quoting *Nader*, 417 F. Supp. at 847).  The *Ziskis* court recognized that "[i]f the independent voter 'chooses not to associate, by not enrolling in a party, his right to vote in the *general* election is unaffected.'"  *Id.* (quoting *Nader*, 417 F. Supp. at 847) (brackets omitted).  In the end, the *Ziskis* court concluded, as did the *Nader* court, that "given the state's interest in protecting the associational rights of party members and in preserving the integrity of the electoral process, the state may legitimately allow political parties to close their primaries to nonmembers."  *Id.*; *Nader*, 417 F. Supp. at 845 (recognizing the right of the state in "protecting party members' associational rights, by legislating to protect the party from intrusion by those with adverse

political principles.") (internal quotation marks omitted); *see also Cal. Democratic Party*, 530

U.S. at 583 ("nonparty members' keen desire to participate in selection of the party's nominee . . .

is overborne by the countervailing and legitimate right of the party to determine its own

membership qualifications.").

    *Ziskis* and *Nader* remain good law.  A recent Third Circuit decision relied on *Nader* to

reject a similar challenge to New Jersey's closed primary.  *Balsam v. Sec'y of State of N.J.*, No.

14-3882, 607 F. App'x 177, 183 (3d Cir. Apr. 8, 2015) (rejecting the plaintiff's argument that the

closed primary system violated his rights under the First and Fourteenth Amendments; explaining

that the "reasoning of *Nader* is directly applicable here" because "*Nader* consider[ed] the

countervailing rights of individuals who were not members of a political party, and it found that

the associational rights of party members and the regulatory interests of the state outweighed

those rights").  Citing to both *Ziskis* and *Nader*, the New Mexico Supreme Court recently

rejected a state constitutional challenge to New Mexico's closed primary system, concluding that

allowing only voters registered with a political party to vote in a primary election was a

reasonably modest burden that furthered the state's interest in security and the purity of elections

and effectively administering them.  *Crum v. Duran*, ___ P.3d ___ , No. S-1-SC 360030, 2017

WL 474461, at *4, *5 (N.M. Feb. 6, 2017).

    And, just last fall an *en banc* Ninth Circuit cited *Ziskis* for the proposition that voting

restrictions in primary elections are treated differently than those in general elections.  *Public

Integrity All., Inc. v. City of Tucson*, 836 F.3d 1019, 1026-27 (9th Cir. 2016) (en banc) (stating

that the *Ziskis* court held that "a law requiring participants in primaries be registered with a

political party did not violate the challenger's Fourteenth Amendment right to vote"), *petition for*

12 - OPINION & ORDER

*cert. filed*, ___U.S.L.W. ___ (U.S. Dec. 5, 2016) (No. 16-730).  In *Public Integrity*, the court considered primary election restrictions adopted by the City of Tucson for city council positions. The court, while noting that primary elections are "state action subject to the same constitutional constraints as general elections[,]" and that primary and general elections "have an obvious and strong interconnection[,]" recognized nonetheless that primary and general elections do not need to be "identically structured and administered." *Id.* at 1027.  The court explained that there were "decades of jurisprudence permitting voting restrictions in primary elections that would be unconstitutional in the general election." *Id.* at 1026 (citing *Ziskis*, *Clingman* (permitting a semi-closed primary), and *Am. Party of Tex. v. White*, 415 U.S. 767 (1974) (allowing states to establish waiting periods before voters may be allowed to change their registration and vote in another party's primary)).  The *Public Integrity* court summarized that these voting restrictions were allowable in primaries because primary elections "serve a different function than general elections[.]" *Id.* at 1027.  While the primary is a critical stage, the "legitimate state interests are not identical with those pertinent to the general election[.]" *Id.*

Plaintiff's constitutional challenges to Oregon's semi-closed primary system have no merit.  Even if Oregon had a truly closed primary system, controlling caselaw holds that such a system does not violate Plaintiff's First or Fourteenth Amendment rights, or the principle of one-person, one-vote.

B.  O.R.S. 248.355

Under Oregon law, each political party which nominates candidates for president and vice-president must select a number of candidates for presidential electors equal to the total number of senators and representatives to which the state is entitled in Congress.  O.R.S.

248.355(1).  These presidential elector candidates must sign a pledge that, if elected, the presidential elector will vote in the electoral college for the candidates of the party for president and vice-president.  O.R.S. 248.355(2).

Plaintiff challenges subsection 2 as violating the Equal Protection Clause and the principle of one-person, one-vote.  Am. Compl. 3-4, § 2.  He alleges that the effect of the law is to coerce him into joining a political party in order to exercise his right to vote at election for presidential electors.  *Id.*  Additionally, he contends that the law denies the "unaffiliated citizen's right to become" a presidential elector.  *Id.*

In his Response Memorandum, he contends that the "reality of Major Party domination of the process" means that a nonaffiliated voter is coerced to associate with a political party to exercise the right to vote.  Pl. Resp. Mem. 23.  He seeks a declaration that the statute violates his First Amendment rights not to be coerced to associate with a political party to exercise his right to vote for electors for president and vice-president.  *Id.*

By its terms, O.R.S. 248.355 requires political parties to choose presidential electors and requires those presidential electors to vote in the electoral college for the presidential and vice-presidential candidates of that party.  It does not directly regulate who may vote in an  election.  It does not directly regulate which political parties may choose electors.  Instead, subsection (1) establishes only the number of electors that "each political party nominating candidates" for president and vice-president must select.  And subsection (2) directs how those presidential electors  are to vote.

As Defendants note, Oregon statutes provide for the nomination of candidates to partisan office by other than the major political parties.  O.R.S. 249.705 - 249.840.  Generally, a minor

14 - OPINION & ORDER

political party, an assembly of voters, or individual voters, may nominate a candidate for each

partisan public office by preparing and filing a certificate of nomination as provided in O.R.S.

249.712 to 249.850.  O.R.S. 249.705.  For example, nonaffiliated voters may nominate a

candidate for president and vice-president, as well as the required seven presidential electors, by

convening an assembly of electors.  O.R.S. 249.735; *see also* Or. Sec'y of State's State

Candidate's Manual, available at http://sos.oregon.gov/elections/Documents/statecandidates.pdf.

(outlining procedures for filing and running for federal or state office, including a section on

nominating candidates for president by major political party, minor political party, and

nonaffiliated candidates).

Given the statutory process for nonaffiliated voters to nominate a candidate and

presidential electors, Oregon law does not force nonaffiliated voters to join a political party to

vote for a presidential elector or to become a presidential elector.  Plaintiff's challenges to O.R.S.

248.355 have no merit.

C.  Winner Take All

According to the National Archives, "[t]he District of Columbia and 48 states have a

winner-takes-all rule for the Electoral College."

https://www.archives.gov/federal-register/electoral-college/faq.html#wtapv; *see also Schweikert*

*v. Herring*, No. 3:16-cv-00072, 2016 WL 7046845, at *2 (W.D. Va. Dec. 2, 2016) (noting that

forty-eight states use the "winner-take-all approach" for selecting presidential electors).  "In these

States, whichever candidate receives a majority of the popular vote, or a plurality of the popular

vote (less than 50 percent but more than any other candidate), takes all of the state's Electoral

votes."  *Id.*  Nebraska and Maine are the exceptions and do not follow the winner-take-all rule.

15 - OPINION & ORDER

*Id.*; *Schweikert*, 2016 WL 7046845, at *2 n.1 (explaining that Maine and Nebraska select electors by congressional district with the remaining two electors awarded to the candidate who earns a plurality of the statewide vote).

Plaintiff argues that the winner-take-all rule effectively dismisses the votes of the forty-nine percent of Oregon voters not in the majority or plurality, "negating their vote and representative voice in the gathering of electors[.]" Am. Compl. 4, ¶ 3. He suggests that the gathering of electors is a statewide legislative body and that the winner-take-all rule effectively denies and dilutes the validity of the vote of a large minority of voters in the state. *Id.* He contends that the rule violates the Equal Protection Clause and the principle of one-person, one-vote. *Id.*

Plaintiff's arguments are foreclosed by Supreme Court precedent. In a 1969 case, the Supreme Court summarily affirmed, *per curiam*, the district court's rejection of constitutional challenges to Virginia's method of providing electors to the electoral college based on a plurality vote in a statewide election. *Williams v. Va. St. Bd. of Elections*, 393 U.S. 320 (1969) (per curiam). The three-judge district court considered the plaintiffs' arguments challenging the winner-take-all system used in Virginia and concluded that the system did not violate the Fourteenth Amendment and the one-person-one-vote principle. 288 F. Supp. 622, 625-28 (E.D. Va. 1968), *summarily aff'd,* 393 U.S. 320 (1969).

The court cited to Article II, Section 1 of the Constitution which gives each state authority to "appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress[.]" U.S. Const. art. II, § 1. The Twelfth Amendment further directs how presidential

electors cast their votes.  U.S. Const. amend. XII.  The *Williams* court noted that Article II, Section I "literally leaves to the State legislature the appointment of electors 'in such manner' as it may direct."  288 F. Supp. at 626.  While the state's authority under the Constitution is not beyond judicial review, *id.*, the Supreme Court has continued to recognize the authority granted the states by Article II, Section 1.  *E.g.*, *Bush v. Gore*, 531 U.S. 98, 104 (2000) (per curiam) ("[T]he state legislature's power to select the manner for appointing electors is plenary.") (citing U.S. Const. art. II, § 1).

The *Williams* court recognized that application of the winner-take-all rule results in the electoral slate "speak[ing] only for the element with the largest number of votes [which] in a sense is discrimination against the minority voters."  288 F. Supp. at 627.  But, the court explained, in its selection of electors "the rule does not in any way denigrate the power of one citizen's ballot and heighten the influence of another's vote."  *Id.*  The court continued by noting that in a "democratic society the majority must rule, unless the discrimination is invidious."  *Id.* No "such evil" was "manifest" before the *Williams* court.  *Id.*  Instead, it found, "[e]very citizen is offered equal suffrage and no deprivation of the franchise is suffered by anyone."  *Id.* Accordingly, the winner-take-all approach did not violate the plaintiff's Fourteenth Amendment rights.

*Williams* is still good law and Plaintiff offers no basis for distinguishing it.  It continues to be cited by courts rejecting similar challenges to state presidential elector selection laws.  *E.g.*, *Schweikert*, 2016 WL 7046845, at *2 (relying on *Williams* to reject the plaintiff's challenges to Virginia's winner-take-all system of selecting presidential electors; describing the plaintiff's request as asking the Court to "upend over two centuries of electoral practice and declare that

17 - OPINION & ORDER

Virginia's winner-take-all method . . . violates the First Amendment, Fourteenth Amendment, Twelfth Amendment, Seventeenth Amendment," and the Voting Rights Act); *New v. Pelosi*, No. 08 Civ. 9055 (AKH), 2008 WL 4755414, at *2 (S.D.N.Y. 2008) (in a case alleging that the electoral college violated the principle of one-person, one-vote, court cited *Williams* and other cases for the proposition that "courts have routinely rejected challenges to the electoral college under the Equal Protection Clause of the Fourteenth Amendment"), *aff'd*, 374 F. App'x 158 (2d Cir. 2010); *Hitson v. Baggett*, 446 F. Supp. 674, 676 (M.D. Ala.) (in case brought by minority voters alleging that state's manner of selecting presidential electors violated their constitutional rights, court relied on *Williams* to reject the argument), *aff'd*, 580 F.2d 1051 (5th Cir. 1978). Plaintiff's winner-take-all claim has no merit.

D.  O.R.S. 248.360(2)

This statute provides that the names of presidential electors shall not be printed on the general election ballot. O.R.S. 248.360(2). A vote for the presidential and vice-presidential candidates "shall be a vote for the electors supporting those candidates and selected as provided by law." *Id.* The statute directs that the general election ballot state that presidential electors are being elected and that a vote for the candidates for president and vice-president shall be a vote for the presidential electors. *Id.*

Plaintiff asserts that the prohibition against placing the presidential electors' names on the ballot violates the "clear language" of Section 2, Clause 2 of the Fourteenth Amendment. Am. Compl. 4-5, ¶ 4. Additionally, he contends that this particular constitutional provision prohibits a state legislature from "appointing" presidential electors because the provision "conveys" the right to vote for the choice of electors to the voter. *Id.* at ¶ 5 (alleging that the right to vote for

electors is conveyed in the Fourteenth Amendment, Section 2 and thus, "supersedes the plenary authority of the State Legislature to 'appoint' electors").  In his Response Memorandum, he further argues that requiring a voter to vote for the candidate and not the presidential elector violates the Guarantee Clause in Article IV, Section 4 of the Constitution which guarantees a republican form of government to the states.  U.S. Const. art. IV,§ 4.  Pl. Resp. Mem. 26.  The last argument appears to hinge on his description of the Electoral College as a national legislative body.

Section 2 of the Fourteenth Amendment begins by stating that "[r]epresentatives shall be apportioned among the several states according to their respective numbers, counting the whole number of persons in each State."  U.S. Const. amend. XIV, § 2.  The beginning of the next sentence is the source of Plaintiff's position here:

> But when the <u>right to vote at any election for the choice of electors for President and Vice-President of the United States</u>, Representatives in Congress, the Executive and Judicial officers of a state, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

*Id.* (emphasis added).

Plaintiff contends that the emphasized language of this provision requires that the names of the presidential electors themselves be on the ballot.  Pl. Resp. Mem. 26 ("Clause 2[] expressly grants Plaintiff the Right-To-Vote for his 'choice of elector'").  He cites no law to support this contention.  Defendants argue that Oregon law is not inconsistent with Section 2 and further, that the Supreme Court has acknowledged the practice of naming the presidential and

vice-presidential candidates on the ballot and not naming the presidential electors. I agree with Defendants that the law does not support Plaintiff's arguments.

The Fourteenth Amendment is one of the post-Civil War Reconstruction Amendments ratified in 1868. *Danforth v. Minnesota*, 552 U.S. 264, 269 (2008). The primary purpose behind the Reconstruction Amendments was to eliminate the vestiges of slavery. *E.g.*, *Slaughter–House Cases*, 16 Wall. 36, 71 (1872) ("[N]o one can fail to be impressed with the one pervading purpose found in [all the Reconstruction amendments] . . . we mean the freedom of the slave race, the security and firm establishment of that freedom, and the protection of the newly-made freeman and citizen from the oppressions of those who had formerly exercised unlimited dominion over him."). While Section 1 of the Fourteenth Amendment prohibits the states from denying any person the deprivation of life, liberty, or property without the due process of law, from denying any person the equal protection of the laws, and from enforcing any laws abridging the privileges and immunities of citizens, Section 2 addresses voting. In particular, Section 2 "provides an electoral penalty against States that withhold the franchise from otherwise eligible voters." *Harvey v. Brewer*, 605 F.3d 1067, 1072 (9th Cir. 2010). "If a State disenfranchises some number of otherwise eligible voters, those disenfranchised persons will count against the State's total population for purposes of determining its representation in Congress." *Id.*

Given the purposes behind the Fourteenth Amendment generally and the particular purpose of Section 2, it is clear that the language Plaintiff relies on is not intended to address the placement of the names of presidential electors on a ballot. Rather, the language is a recognition of the preceding constitutional provisions of Article II, Section 1 and the Twelfth Amendment. As previously noted, Article II, Section 1 requires states to appoint electors who then, under the

20 - OPINION & ORDER

provisions further detailed in Section 1 which was later amended by the Twelfth Amendment,

vote for president and vice-president. U.S. Const. art. II, § 1; U.S. Const. amend. XII. If the

Fourteenth Amendment had been written as the "right to vote at any election for President and

Vice-President," it would have been inconsistent with these other constitutional provisions which

mandate that voters actually vote for electors who then vote for the president and vice-president.

The inclusion of the words "right to vote at any election for the choice of electors for President

and Vice-President" recognized these other constitutional provisions in the context of penalizing

states which continued to eviscerate the voting rights of recently-freed slaves. Such recognition

does not, however, dictate the placement of electors' names on a ballot.

      Understood in this context, I agree with Defendants that O.R.S. 248.360 is not

inconsistent with Section 2. Because the statute directs that a vote for the presidential and vice-

presidential candidates is a vote for the electors, the statute effectuates the right to vote for those

electors and does not contradict it. Rather, it supports the relevant constitutional provisions

regarding presidential electors. Moreover, as Defendants note, the Supreme Court has

recognized that the practice in many states of "allow[ing] a vote for the presidential candidate . . .

to be counted as a vote for his party's nominees for the electoral college[,]" is a "long-continued

practical interpretation of the constitutional propriety of an implied or oral pledge of his ballot by

a candidate for elector as to his vote in the electoral college[.]" *Ray v. Blair*, 343 U.S. 214, 229

(1952) (noting in the context of upholding political party's requirement that primary elector

candidates pledge their support to the nominees of the party's national convention for president

and vice-president, that "more than twenty states do not print the names for the candidates for

electors on the general election ballot."). And, at least one circuit court has rejected the argument

21 - OPINION & ORDER

Plaintiff makes here. *Fischer v. Rollins*, 995 F.2d 1061 (1st Cir. 1993) (unpublished) (rejecting Plaintiff's constitutional challenge to state statutes omitting the names of presidential electors from the ballot as "legally meritless" and citing Article II, section 1 of the Constitution in support).

Given that Plaintiff fails to establish that O.R.S. 248.260(2) violates Section 2 of the Fourteenth Amendment, his premise for arguing that Section 2 "supersedes the plenary authority" of the state to appoint presidential electors has no validity. As noted above, Supreme Court decisions over the years have expressly recognized the state's authority to appoint presidential electors as explicitly granted in Article II, Section 1. *E.g.*, *Bush*, 531 U.S. at 104 ("[T]he state legislature's power to select the manner for appointing electors is plenary.") (citing U.S. Const. art. II, § 1); *McPherson v. Blacker*, 146 U.S. 1, 35 (1892) (discussing Article II, Section 1 and stating that "from the formation of the government until now the practical construction of the clause has conceded plenary power to the state legislatures in the matter of the appointment of electors" and further recognizing that "the appointment and mode of appointment of electors belong exclusively to the states under the constitution of the United States"). Nothing in Section 2 of the Fourteenth Amendment is inconsistent with the state's authority and Plaintiff's position on this issue is baseless.

Finally, Plaintiff offers no legal support for his position that the Electoral College is a legislative body and that therefore, O.R.S. 248.360(2)'s proscription on placing elector names on the ballot violates the Guarantee Clause. I do not entertain this argument further.

E. Fourteenth Amendment, Section 5

The Amended Complaint makes no reference to Section 5 of the Fourteenth Amendment.

22 - OPINION & ORDER

But Plaintiff mentions it in his Response Memorandum to bolster his arguments that Oregon laws regarding presidential electors violate Section 2 of the Fourteenth Amendment.[7]  At one point he argues that his right to vote for electors is guaranteed by Section 2 and that under Section 5, Congress is the only legislative body with authority to "legislate, implement, and act upon" his right to vote for electors.  Pl. Resp. Mem. 21.  Plaintiff's contention that Section 5 of the Fourteenth Amendment provides exclusive authority to Congress to regulate the selection of presidential electors or the placement of their names on the ballot is inconsistent with Article II, Section 1 which, as previously explained expressly grants power to the states for appointing electors.  His reading of Section 5 would deprive the states of the authority granted to them in Article II, section 1.  Morever, because there is no constitutional requirement that names of electors appear on the ballot and I have rejected Plaintiff's Section 2 argument on this issue, Section 5 is inapplicable here.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[7] Plaintiff refers to Section 5 of the Fifteenth Amendment at times.  Pl. Resp. Mem. 13, 21.  But because there is no such section in that particular amendment, and because he otherwise refers to and quotes section 5 of the Fourteenth Amendment, I understand the reference to be to the Fourteenth Amendment's Section 5.  *Id.* at 13, 21 (citing to Section 5 of the Fifteenth Amendment but quoting Section 5 of the Fourteenth Amendment); *id.* at 16 (referring to and quoting Section 5 of the Fourteenth Amendment); *id.* at 17 (referring to Section 5 of the Fourteenth Amendment).

CONCLUSION

Defendants' motion to dismiss [19] is granted.  Plaintiff's claims are dismissed with

prejudice.

IT IS SO ORDERED.

Dated this ____29____ day of _____March_____, 2017.


_____
Marco A. Hernandez
United States District Judge

24 - OPINION & ORDER